UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CASSANDRA EVANS, ON BEHALF OF JLE,
A MINOR,

                            Plaintiff,           **MEMORANDUM AND ORDER**

      v.                                          23-cv-8230 (ST)

TREVOR J. ANDERSON and SAINT
ANTHONY'S HIGH SCHOOL,

                            Defendants.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

        Cassandra Evans, on behalf of minor JLE, ("Plaintiff") sued Trevor Anderson ("Defendant") and Saint Anthony's High School ("SAHS") for several causes of action arising from alleged sexual assaults by Defendant that took place at SAHS and elsewhere. Defendant asserted counterclaims, including one for Intentional Infliction of Emotional Distress ("IIED"). Before this Court is Plaintiff's motion to dismiss the IIED counterclaim (the "Motion"). For the reasons discussed below, this Court GRANTS the Motion.

## BACKGROUND

        On November 6, 2023, Plaintiff sued Defendant alleging that Defendant subjected minor JLE to various forms of sexual assault from late 2010 to mid-January 2021. Compl., ECF No. 1. Unless otherwise cited, the Court takes the following facts from Defendant's Answer and Counterclaim and assumes them to be true for the purposes of this Motion.[1] Plaintiff and Defendant were in a romantic relationship and cohabitated primarily at Defendant's home in West

---

[1] *See Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, 625 F. Supp. 3d 269, 285–86 (S.D.N.Y. 2022) (noting that the same standards apply for a motion to dismiss a counterclaim and a motion to dismiss a complaint and that factual allegations in the counterclaim should be accepted as true).

Sayville, New York.  Def.'s Answer ¶ 159, ECF No. 41.  Plaintiff's daughter, JLE, also resided with the couple during that period.  *Id.*  Defendant was employed at SAHS as a guidance counselor and chairperson of the guidance department.  *Id*. ¶ 160.  Defendant was also employed by a social service agency called the Family Service League ("FSL") and a company that organizes "endurance events."  *Id.* ¶¶ 162, 163.

Plaintiff and JLE moved out of Defendant's West Sayville home in mid-January 2021.  *Id.* ¶ 71.  On January 27, 2021, Defendant received an email from Plaintiff saying that Defendant was a "perpetrator," "child molester," and demanding a $319 payment so that he could "retain [his] freedom and ability to make a living, [his] ability to show [his] face in public."  *Id*. ¶ 232.  The email further demanded payment, or Plaintiff would "schedule a trip to the police station and CPS." *Id.*  On the same day, Plaintiff filed a Family Offense Petition and was granted an order of protection against Defendant in Suffolk County Family Court.  Am. Compl. ¶¶ 74,75, ECF No. 38.

More emails from Plaintiff came on February 1, 2021, saying Plaintiff would have Defendant "arrested, tried and convicted, required to attend relevant perpetrator programs and to never work with children, single women, nor families again" if Defendant did not pay Plaintiff $41,803.  Def.'s Answer ¶ 233.  Another email stated that Plaintiff would have a "criminal order or [sic] protection" secured against Defendant, have his social work license revoked, and have his name be placed on the national registry of sex offenders if he did not vacate his home and agree to remain outside of 18 different states and territories.  *Id.* ¶ 234.

On February 11, 2021, Plaintiff also made statements to Defendant's co-worker at SAHS that there was inappropriate sexual behavior between Defendant and JLE and that Defendant was a "child molester."  *Id.* ¶ 167. On the same day, Plaintiff contacted the principal of SAHS and

stated the same. *Id.* ¶ 168.  Plaintiff also contacted Defendant's family, friends, and neighbors stating Defendant had engaged in sexual misconduct with JLE. *Id.* ¶¶ 171–85.

On February 10, 2021, Plaintiff sent a letter to an employee and the CEO of FSL where Defendant was also employed.  *Id.* ¶ 183. The letter called Defendant a "child molester" and "pedophile" and said that Defendant "took nude photographs" of JLE and "masturbated in front of" her.  *Id.*  On February 19, 2021, Plaintiff emailed the endurance event company where Defendant was employed stating that Defendant was a "predator," "pedophile," and "manipulative and sadistic monster."  *Id.* ¶ 186.  Plaintiff demanded that Defendant be removed from their workforce.  *Id.*

Defendant subsequently resigned from his position in the SAHS guidance department and was terminated from his position at FSL.  *Id.* ¶¶ 160–64.  SAHS also stopped engaging in contracts for furnishing crowd control equipment with Defendant.  *Id.* ¶ 162.  Defendant asserts that the accusations Plaintiff made against him were false, caused him to lose his employment, and caused emotional distress.  *Id.* ¶¶ 158, 237.

Plaintiff filed the operative Amended Complaint on March 12, 2024, adding SAHS as a defendant.  *See generally* Am. Compl.  Defendant then filed his answer, which included the IIED counterclaim.  *See* Def.'s Answer ¶¶ 231–39.  Plaintiff moved to dismiss Defendant's IIED counterclaim, which Defendant opposed.  *See* Mot., ECF No. 50; Def.'s Mem. Opp'n, ECF No. 51.  Thereafter, Plaintiff filed a Reply.  Reply, ECF No. 53.

## STANDARD OF REVIEW

Plaintiff moves to dismiss the IIED counterclaim under Federal Rule 12(b)(6) of Civil Procedure.  Mot. at 1.  The Court evaluates a motion to dismiss a counterclaim using the same standard as a motion to dismiss a complaint.  *Phx. Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554

F. Supp. 3d 568, 585 (S.D.N.Y. 2021); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015). Under Rule 12(b)(6), a party may move to dismiss a counterclaim that fails to state a claim. Fed. R. Civ. P. 12(b)(6). To survive such a motion, a counterclaim must contain sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether the counterclaim states a facially plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In doing so, the Court must accept the counterclaim's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019).

## **DISCUSSION**

Under New York law, "the elements of a claim for intentional infliction of emotional distress are (i) extreme and outrageous conduct, (ii) an intent to cause—or disregard of a substantial probability of causing—severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) the resultant severe emotional distress." *Lau v. S & M Enters.*, 72 A.D.3d 497, 498 (1st Dep't 2010); *accord Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).

This standard is "rigorous" and "difficult to satisfy." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993) (citation omitted). "New York courts have been extremely reluctant to find extreme and outrageous conduct." *In re Sears Holdings Corp.*, 628 B.R. 402, 2021 WL 1192112, at *4 (S.D.N.Y. 2021) (collecting cases). An IIED claim is "highly disfavored" under New York

law and "is to be invoked only as a last resort." *O'Neill v. NYU Langone Hosps.*, 23-cv-4679 (RPK) (RML), 2024 2024 WL 4216501, at *7 (E.D.N.Y. Sept. 17, 2024) (citing *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014)).

I.  **EXTREME AND OUTRAGEOUS CONDUCT**

The first element required to sustain an IIED claim is extreme and outrageous conduct. For this element to be satisfied, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Aldabe v. Sulllivan & Cromwell LLP*, 23-cv-850 (AT) (GWG), 2023 WL 6566673, at *7 (S.D.N.Y. Oct. 10, 2023) (quoting *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 56 (2016)), *report and recommendation adopted*, 2023 WL 7184423 (S.D.N.Y. Nov. 1, 2023).

Cases involving false accusations of criminal conduct need "additional outrageous behavior" to meet the extreme and outrageous conduct requirement. *Truman v. Brown*, 434 F. Supp. 3d 100, 119–20 (S.D.N.Y. 2020) (citing *Baez v. Jetblue Airways*, 745 F. Supp. 2d 214, 224 (E.D.N.Y. 2010)). "The Second Circuit has suggested that sufficient additional outrageous behavior could be 'some combination' of alleged 'public humiliation . . . verbal abuse, harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Id.* at 120 (citing *Stuto*, 164 F.3d at 828–29).

One court has held that a false accusation of sexual assault that "exacted a devastating toll" of prosecution, employment loss, and divorce was sufficient to satisfy the extreme and outrageous requirement. *See Kurschus v. PaineWebber, Inc.*, 16 F. Supp. 2d 386, 395 (S.D.N.Y. 1998). A New York court has found that "making false charges in a proceeding against a high school principal and spreading false rumors that the principal had also been involved in an affair, had used student

5

funds for his own benefit, and utilized associates to work on his house during school hours, all in order to coerce his resignation" to be extreme and outrageous conduct sufficient to state an IIED claim. *See Talmor v. Talmor*, 185 Misc. 2d 293, 299 (Sup. Ct. Nassau Cnty. 2000) (citing *Sullivan v. Bd. of Educ.*, 131 A.D.2d 836, 839 (2d Dep't 1987)).

Here, Plaintiff argues that Defendant has failed to satisfy the "extreme and outrageous" element. *See* Mot. at 3. However, accepting Defendant's well-pleaded factual allegations as true and making all reasonable inferences in his favor, as required at this stage in the proceeding, Defendant has sufficiently, albeit narrowly, alleged Plaintiff's conduct to be extreme and outrageous. Plaintiff wrote Defendant calling him a "child molester," stating that he would be "arrested, tried, and convicted… never be allowed to work with children, single women, nor families again," and demanding $41,803. Def.'s Answer ¶¶ 232, 233. In another email, Plaintiff said that she would schedule a trip to the police station and Child Protective Services ("CPS") if Defendant did not comply with her demands. *Id.* ¶ 232. Plaintiff eventually reported Defendant to CPS. Am. Compl. ¶¶ 74, 75. Moreover, Plaintiff notified Defendant's family, friends, and employers of the "falsely made" allegations that Defendant had sexually assaulted a minor. Def.'s Answer ¶¶ 167 –87. Defendant then lost two jobs. *Id.* ¶¶ 160–65.

While there is a high bar for the extreme and outrageous conduct requirement to state an IIED claim, the counterclaim alleged that Plaintiff "falsely" accused Defendant of sexually abusing a minor for a 10 year period, spread that information to Defendant's friends, family, and employers, reported Defendant to CPS, and sent several emails calling Defendant a child molester and threatening criminal prosecution if Defendant did not pay her and move. *Id.* ¶¶ 160–234. Assuming the truth of those allegations, it is plausible that sufficiently extreme and outrageous

6

conduct occurred to narrowly satisfy the first element. *See Kurschus*, 16 F. Supp. 2d at 395; *see also Sullivan*, 131 A.D.2d at 839; *see also Truman,* 434 F. Supp. 3d at 120.

## II.   CONCLUSORY NATURE OF THE CLAIM

Defendant has failed, however, to satisfy the "severe emotional distress" prong of his IIED claim. "To qualify as severe emotional distress, the emotional distress suffered by the plaintiff must be so severe that no reasonable person could be expected to endure it." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (quotations omitted). Courts have even found that allegations of "severe and permanent psychological and emotional injuries, including, but not limited to, fear and apprehension of imminent physical harm, humiliation, embarrassment, shame, bouts of screaming, and prolonged agitation" to be insufficient to state a claim for emotional distress. *See Cheikhaoui v. City of New York.*, 2-cv-08855 (CM), 2023 WL 5917646, at *11 (S.D.N.Y. Sep. 11, 2023).

Claims for IIED must allege the resultant severe emotional distress in a non-conclusory fashion. *Tantaros v. Fox News Network, LLC*, 17-cv-2958 (GBD), 2018 WL 2731268, at *10 (S.D.N.Y. May 18, 2018); *see also Medcalf*, 938 F. Supp. 2d at 490; *see also Taylor v. Quayyum*, 16-cv-1143 (GHW), 2021 WL 6065743, at *9 (S.D.N.Y. Dec. 21, 2021) ("Plaintiff's only reference to emotional distress is the broad assertion that he suffered 'mental anguish' . . . This lone and conclusory allegation is insufficient to plead severe emotional distress."). Any allegations of suffering from severe emotional distress must be supported with objective factual allegations and not speculative claims. *See Allam v. Meyers*, 906 F. Supp. 2d 274, 282 (S.D.N.Y. 2012) (citing *Roche v. Claverack Coop. Ins. Co.*, 59 A.D.3d 914, 919 (3d Dep't 2009)).

In this case, Defendant's counterclaim merely alleges that he suffered "severe emotional distress." Def.'s Answer ¶ 237. This lone, conclusory remark concerning the alleged resultant

7

distress is insufficient to satisfy the fourth element of an IIED claim. *See Specht v. City of New York*, 15 F.4th 594, 606 (2d Cir. 2021) ("[the] amended complaint levels only conclusory allegations that he suffered emotional distress, allegations that are insufficient to state a claim."). The case Defendant relies on in support of his IIED claim, *Halio v. Lurie*, does not save him, as there the plaintiff pleaded emotional distress with more specificity than here. Def.'s Mem. Opp'n at 6; *see* 15 A.D.2d 62, 64 (2d Dep't 1961) ("That plaintiff was, by the said acts of defendant, made sick, nervous, unable to sleep, and unable to eat and digest her food as before; was compelled to obtain medical aid in an endeavor to restore her health and was made to suffer severe mental anguish, and still suffers the same."). As such, Defendant fails to state a claim for IIED.

### III. DUPLICATIVE CLAIMS

Along with moving to dismiss the IIED counterclaim on the grounds that Defendant failed to allege the claim's required elements, Plaintiff also moves to dismiss the IIED counterclaim by arguing that it is duplicative of the other counterclaims. *See* Mot. at 2.

When the conduct complained of in an IIED claim falls within the ambit of other traditional tort claims, the IIED claim is duplicative of the other claims and is typically barred. *See Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 316 (S.D.N.Y. 2005); *see also Sylvester v. City of New York*, 385 F. Supp. 2d 431, 443 (S.D.N.Y. 2005). However, when alleged conduct applies to IIED elements and does not apply to the traditional tort claims, falling solely within the ambit of the IIED elements, the IIED claim may not be duplicative. *See Sylvester*, 385 F. Supp. 2d at 431; *see also Chau v. Donovan*, 357 F. Supp. 3d 276, 288 (S.D.N.Y. 2019) ("Because this potentially tortious conduct is not subsumed by Ms. Chau's battery claim (or assault claim), her IIED claim may proceed.").

8

Here, the IIED counterclaim alleges conduct that falls under both the defamation and the IIED counterclaims, such as writing Defendant's employers to notify them of Defendant's alleged sexual misconduct. Def.'s Answer ¶¶ 167–86. However, the emails from Plaintiff sent only to Defendant concern alleged conduct that only applies to the IIED claim elements—namely, extreme and outrageous conduct and intent to cause emotional distress. *Id.* ¶¶ 232–34. As Defendant alleges some conduct that applies only to the IIED claim elements, the Court need not dismiss the IIED claim for being duplicative of the other counterclaims. *See Sylvester*, 385 F. Supp. 2d at 431 (holding an IIED claim to not be duplicative when elements of an IIED claim fall outside of the other tort causes of action).

While the counterclaim is not duplicative, it is nevertheless insufficiently pleaded because it does not adequately plead the resultant emotional distress, as explained above, and thus fails.

## CONCLUSION

For the foregoing reasons, the Motion to dismiss Defendant's IIED counterclaim is GRANTED.

**SO ORDERED.**

                                        /s/ Steven Tiscione
                                        Steven Tiscione
                                        United States Magistrate Judge
                                        Eastern District of New York

Dated: Central Islip, New York
March 31, 2025